No. 24-5839

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NIKKI BOLLINGER GRAE, et al.,
Plaintiffs-Appellees,

and

THE NASHVILLE BANNER,
Intervenor-Appellant

v.

CORRECTIONS CORPORATION OF AMERICA, et al.,
Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Tennessee, No. 3:16-cv-02267
Hon. Aleta A. Trauger, United States District Judge

**REPLY BRIEF OF INTERVENOR-APPELLANT
THE NASHVILLE BANNER**

Daniel A. Horwitz
Melissa K. Dix
Lindsay Smith
Horwitz Law, PLLC
4016 Westlawn Dr.
Nashville, TN 37209
(615) 739-2888

Wendy Liu
Adina H. Rosenbaum
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Intervenor-Appellant*

December 27, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................ 2

I.   This Court has jurisdiction over this appeal. .................................. 2

II.  The strong presumption in favor of openness attaches to all records filed on the docket, regardless of whether the court relies on them. .......................................................................... 6

III. The district court erred in denying the motion to unseal the complete transcripts filed on the court docket. ........................... 12

    A.   CoreCivic bears a heavy burden to justify the sealing of the transcripts. .............................................................. 12

    B.   No compelling interest overcomes the strong presumption in favor of openness here. ............................................... 13

        1. CoreCivic's assertion of trade secrets fails. .................... 14

        2. CoreCivic's assertion that the sealed information is "source selection information" fails. ............................... 18

    C.   The district court's sealing order was not narrowly tailored. .................................................................. 25

    D.   The Court should reverse and order unsealing of the transcripts. .............................................................. 26

CONCLUSION .......................................................................... 28

CERTIFICATE OF COMPLIANCE ....................................................... 29

CERTIFICATE OF SERVICE ............................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Small Business League v. Department of Defense,*
    372 F. Supp. 3d 1018 (N.D. Cal. 2019) ...............................................22

*Anoke v. Twitter, Inc.,*
    2024 WL 3908108 (N.D. Cal. Aug. 20, 2024) ..........................................3

*Berkshire v. Dahl,*
    928 F.3d 520 (6th Cir. 2019) ..............................................................19

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,*
    814 F.3d 132 (2d Cir. 2016) ................................................................9

*Blackwell v. Nocerini,*
    – F.4th –, 2024 WL 5114313 (6th Cir. Dec. 16, 2024) ............................4

*Brown & Williamson Tobacco Corp. v. Federal Trade Commission,*
    710 F.2d 1165 (6th Cir. 1983) ......................................................6, 9, 27

*Citizens for Responsibility & Ethics in Washington v. United States
    General Services Administration,*
    358 F. Supp. 3d 50 (D.D.C. 2019) ......................................................23

*Cooter & Gell v. Hartmarx Corp.,*
    496 U.S. 384 (1990) ..........................................................................2

*Doe v. Public Citizen,*
    749 F.3d 246 (4th Cir. 2014) ..............................................................26

*EM Ltd. v. Republic of Argentina,*
    695 F.3d 201 (2d Cir. 2012) ................................................................5

*Fair Laboratory Practices Associates v. Riedel,*
    666 F. App'x 209 (3d Cir. 2016) ..........................................................4

*Flexmir, Inc. v. Herman,*
  40 A.2d 799 (N.J. Ch. 1945) ................................................... 17

*In re Bair Hugger Forced Air Warming Devices Products Liability
  Litigation,*
  9 F.4th 768 (8th Cir. 2021) ...................................................... 8

*In re Knoxville News-Sentinel Co.,*
  723 F.2d 470 (6th Cir. 1983) ................................................... 24

*In re National Prescription Opiate Litigation,*
  927 F.3d 919 (6th Cir. 2019) ............................................... 8, 27

*In re Perrigo Co.,*
  128 F.3d 430 (6th Cir. 1997) ................................................... 11

*James B. Oswald Co. v. Neate,*
  98 F.4th 666 (6th Cir. 2024) ................................................... 18

*JPMorgan Chase Bank, N.A. v. Winget,*
  920 F.3d 1103 (6th Cir. 2019) ................................................... 3

*Kokkonen v. Guardian Life Insurance Co. of America,*
  511 U.S. 375 (1994) ................................................................. 3

*League of Women Voters of the United States v. Newby,*
  963 F.3d 130 (D.C. Cir. 2020) ................................................. 10

*Lipman v. Budish,*
  974 F.3d 726 (6th Cir. 2020) ................................................... 15

*Magnesium Machine, LLC v. Terves, LLC,*
  2021 WL 5772533 (6th Cir. Dec. 6, 2021) ................................. 15

*Marshall v. Planz,*
  347 F. Supp. 2d 1198 (M.D. Ala. 2004) ...................................... 3

*MetLife, Inc. v. Financial Stability Oversight Council,*
  865 F.3d 661 (D.C. Cir. 2017) ..........................................................9, 10

*Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.,*
  823 F.2d 159 (6th Cir. 1987) ...........................................................4, 27

*Michigan Bell Telephone Co. v. Strand,*
  305 F.3d 580 (6th Cir. 2002) ...................................................................7

*Mohawk Industries, Inc. v. Carpenter,*
  558 U.S. 100 (2009) ...........................................................................5, 6

*Nixon v. Warner Communications, Inc.,*
  435 U.S. 589 (1978) ...............................................................................17

*Ohio State University v. Redbubble, Inc.,*
  989 F.3d 435 (6th Cir. 2021) ...................................................................7

*Republic of Argentina v. NML Capital, Ltd.,*
  573 U.S. 134 (2014) .................................................................................5

*Rudd Equipment Co. v. John Deere Construction & Forestry Co.,*
  834 F.3d 589 (6th Cir. 2016) ........................................................4, 6, 9

*Schmedding v. May,*
  85 Mich. 1 (1891) ..................................................................................17

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,*
  825 F.3d 299 (6th Cir. 2016) ......6, 7, 9, 10, 12, 13, 15, 16, 18, 24, 25, 27

*Tennille v. Western Union Co.,*
  774 F.3d 1249 (10th Cir. 2014) ...............................................................5

*Thomas M. Cooley Law School v. American Bar Ass'n,*
  459 F.3d 705 (6th Cir. 2006) .................................................................19

*United States v. Beckham,*
  789 F.2d 401 (6th Cir. 1986) ...................................................................7

iv

*United States v. Doe,*
  962 F.3d 139 (4th Cir. 2020) .................................................................4

*United States v. Holy Land Foundation for Relief & Development,*
  624 F.3d 685 (5th Cir. 2010) .................................................................26

*United States v. Howley,*
  707 F.3d 575 (6th Cir. 2013) .................................................................17

*United States v. Ladd,*
  218 F.3d 701 (7th Cir. 2000) .................................................................26

*United States ex rel. Oberg v. Nelnet, Inc.,*
  105 F.4th 161 (4th Cir. 2024) ...............................................................9

*United States v. Walker,*
  838 F. App'x 333 (10th Cir. 2020) ........................................................4

*White v. Chapman,*
  2015 WL 4360329 (E.D. Va. July 14, 2015) .........................................3

*White v. New Hampshire Department of Employment Security,*
  455 U.S. 445 (1982) ...............................................................................2

*Willy v. Coastal Corp.,*
  503 U.S. 131 (1992) ...............................................................................2

**Statutes**

18 U.S.C. § 1839 ...........................................................................17, 18

28 U.S.C. § 1291 .....................................................................1, 3, 4, 5

41 U.S.C. § 2101(7) ...........................................................................21

41 U.S.C. § 2102 ................................................................................21

41 U.S.C. § 2102(a)(1)...................................................................21, 22

## Regulations

48 C.F.R. § 2.101 ....................................................................21

48 C.F.R. § 3.104-4(a)................................................ 18, 20, 23

48 C.F.R. § 3.104-4(e)(1)...............................................23, 24

48 C.F.R. § 3.104-4(e)(2)....................................................23

48 C.F.R. § 3.104-4(f)(3) ....................................................22

48 C.F.R. § 15.506 ..............................................................23

## Other Authorities

Sarah Grace Taylor, *Lawmakers Question Tennessee's Partnership with CoreCivic*, Nashville Banner (Nov. 21, 2024), https://nashvillebanner.com/2024/11/21/tennessee-lawmakers-question-corecivic......................................................................8

Wright & Miller, 15A *Federal Practice & Procedure* § 3911 (3d ed. June 2024 update)........................................................5

Wright & Miller, 15A *Federal Practice & Procedure* § 3916 (3d ed. June 2024 update)........................................................5

## INTRODUCTION

Two dozen deposition transcripts filed on the district court docket in this case remain sealed. The district court's decision denying the Nashville Banner's request to unseal those records cannot stand in light of the strong presumption in favor of openness of court records. The reasons stated by the district court or asserted by CoreCivic do not provide a compelling basis to overcome it, and the seal on the transcripts is indisputably not narrowly tailored.

In its brief, CoreCivic does not dispute that the district court erred in stating that an interest in encouraging the filing of complete transcripts justifies sealing the records. Instead, CoreCivic argues that the strong presumption of openness is weak in this case and relies on reasons for nondisclosure that do not justify sealing under this Court's precedents. CoreCivic's arguments are unsupported by the record and wrong under this Court's law.

CoreCivic's jurisdictional argument is equally unavailing. The district court had jurisdiction over the Banner's motion because it was a collateral issue that did not impact the final judgment on the merits. This Court has jurisdiction under 28 U.S.C. § 1291 over the district court's

final order adjudicating the Banner's motion. And this Court has squarely held that it has jurisdiction under the collateral order doctrine over district court orders sealing or unsealing records.

The Court should reverse the district court's decision denying the motion to unseal with respect to the complete deposition transcripts filed on the docket and remand with instructions to unseal those records.

## ARGUMENT

## I.    This Court has jurisdiction over this appeal.

**A.** Although CoreCivic questions the district court's jurisdiction to decide the Banner's post-judgment motion, "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). For example, "even 'years after the entry of a judgment on the merits' a federal court could consider an award of counsel fees," *id.* (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 451 n.13 (1982)), and other matters that "require[] the determination of a collateral issue," *id.* at 396. A post-judgment order addressing such an issue "implicates no constitutional concern because it 'does not signify a district court's assessment of the legal merits of the complaint,'" *Willy v. Coastal Corp.*,

503 U.S. 131, 138 (1992) (quoting *Cooter & Gell*, 496 U.S. at 396), and "therefore does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction," *id.*; *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994) (stating that ancillary jurisdiction "enable[s] a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees").

Thus, district courts properly exercise jurisdiction over post-judgment motions to unseal. *See, e.g.*, *Anoke v. Twitter, Inc.*, 2024 WL 3908108, at *2 (N.D. Cal. Aug. 20, 2024); *White v. Chapman*, 2015 WL 4360329, at *2–3 (E.D. Va. July 14, 2015); *Marshall v. Planz*, 347 F. Supp. 2d 1198, 1199 (M.D. Ala. 2004). Likewise, here, the district court had jurisdiction over the Banner's motion to unseal the records sealed by the court's prior orders in the lawsuit.

**B.** This Court has jurisdiction under 28 U.S.C. § 1291 over the district court's order on the Banner's motion to unseal, which "completely disposed of the matter." *JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1106 (6th Cir. 2019) (quoting Wright & Miller, *Fed. Prac. & Proc.* § 3916 (2d ed. 2018)). As multiple courts have held, a post-judgment order

sealing or unsealing records is a final, appealable order over which the courts of appeals have jurisdiction. *See, e.g.*, *United States v. Doe*, 962 F.3d 139, 143–44 (4th Cir. 2020) (collecting cases); *United States v. Walker*, 838 F. App'x 333, 336 (10th Cir. 2020); *Fair Lab. Practices Assocs. v. Riedel*, 666 F. App'x 209, 211 (3d Cir. 2016); *see also Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 161 (6th Cir. 1987) (exercising jurisdiction over a sealing order where the case "had been settled and dismissed").

Moreover, this Court has squarely held that it has "jurisdiction under the collateral order doctrine" over orders unsealing or "sealing a court's records and denying public access to court documents." *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 592 (6th Cir. 2016). Such orders conclusively and finally determine that the records will be protected from disclosure, are "effectively unreviewable absent this appeal," and resolve an "issue 'completely separate' from the merits of the underlying dispute." *Id.* at 592–93. Under the collateral order doctrine, rulings that conclusively and finally resolve a collateral issue are "'final' within the meaning of § 1291." *Blackwell v. Nocerini*,

– F.4th –, 2024 WL 5114313, at *3 (6th Cir. Dec. 16, 2024); *see* Wright & Miller, 15A *Fed. Prac. & Proc.* § 3911 (3d ed. June 2024 update).

CoreCivic's suggestion that *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 107 (2009), limits appellate review of collateral orders to orders entered before final judgment should be rejected. As Wright & Miller explains, "[l]ong ago, the Supreme Court recognized that appeal should be available to test the trial court's disposition of important questions that arise after a final judgment." Wright & Miller § 3916. "Many … matters may be raised in the trial court after judgment," and "[f]inality doctrine should not create any distinctive difficulties in regulating appellate review, and ordinarily does not." *Id*. Thus, courts have invoked the collateral order doctrine in finding post-judgment orders appealable. *See, e.g.*, *Tennille v. W. Union Co.*, 774 F.3d 1249, 1253 (10th Cir. 2014) (stating that an order imposing appeal bond "is a final order ending the post-judgment bond proceeding and is thus appealable under 28 U.S.C. § 1291"); *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 205–06 (2d Cir. 2012) (discovery order in post-judgment collection proceedings), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014). And the doctrine applies comfortably here, with respect

to the post-judgment motion to unseal, because the Banner's right of public access is not "'adequately vindicable' or 'effectively reviewable'" otherwise, thereby "imperil[ing] [the] substantial public interest" in access to court records. *Mohawk*, 558 U.S. at 107.

## II. The strong presumption in favor of openness attaches to all records filed on the docket, regardless of whether the court relies on them.

This Circuit "ha[s] long recognized a 'strong presumption in favor of openness' regarding court records." *Rudd Equip*, 834 F.3d at 593 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983)); *see Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). Although CoreCivic begins by acknowledging the "strong presumption," CoreCivic Br. 18, it primarily argues that this strong presumption is weak here. Its argument lacks merit.

**A.** As an initial matter, this appeal is the first time that CoreCivic has argued that the strong presumption of openness can be lacking or weakened. *See* Mem. & Order, RE 515, Page ID #27397 ("The Banner asserts—and no party connected to this litigation denies—that there is a 'strong presumption in favor of openness' as to court records."). Because

6

CoreCivic did not raise this argument below, this Court need not consider it. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 443 (6th Cir. 2021) ("This court does not ordinarily address new arguments raised for the first time on appeal." (quoting *Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 590 (6th Cir. 2002))).

In any event, the notion that the strong presumption of openness is weaker for a subset of court records, CoreCivic Br. 20, is contrary to this Court's precedent. This Court has recognized a strong presumption in favor of public access to *all* records filed on the court docket. *See Shane Grp.*, 825 F.3d at 307 (applying the presumption to "every document that was sealed in the district court," including pleadings, motions, briefs, and 194 exhibits to the parties' filings); *id.* (applying the presumption to "materials that the parties have chosen to place *in the court record*").

CoreCivic's reliance on *United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986), is unavailing. In that case, which concerned a request to copy tapes played in open court, among other things, the Court distinguished the "fundamental right" to "full access" to the information in court proceedings, on the one hand, from the weaker right to duplicate

"information already made available," on the other. *See id.* at 414–15. This case falls into the former category.

Further, the Court's statement that the strong presumption of public access applies with "extra strength given the paramount importance of the litigation's subject matter," *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 939 (6th Cir. 2019), does not support CoreCivic's notion of a *weakened* presumption. And such a position has no applicability here, where the subject matter of this case is indisputably of considerable importance. *See* Order, RE 494, Page ID #26212; *see also* Sarah Grace Taylor, *Lawmakers Question Tennessee's Partnership with CoreCivic*, Nashville Banner (Nov. 21, 2024), https://nashvillebanner .com/2024/11/21/tennessee-lawmakers-question-corecivic.[1]

**B.** CoreCivic apparently would limit the public's right of access to information that a party or the district court has "relied upon" or "cited." *See* CoreCivic Br. 14 (recognizing that it has "no basis for objecting to the unsealing" of excerpts that were cited); *id.* at 20–23. If adopted, that

---

[1] CoreCivic also cites an Eighth Circuit case, *see* CoreCivic Br. 20 n.1, but, in contrast to this Court, the Eighth Circuit has declined to adopt a strong presumption in favor of openness. *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 791 (8th Cir. 2021).

position would "seriously undermin[e] the tradition of an open judicial system." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1180 (rejecting a standard justifying sealing based on the parties' "desire … to shield prejudicial information"). "Carried to its logical conclusion, that view would permit the redaction of every page of a brief or joint appendix that a court opinion did not cite or quote." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 668–69 (D.C. Cir. 2017).

Instead, as this Court has explained, the strong presumption in favor of public access applies "when the parties place material in the court record" because it is at that time that "[t]he line between th[e] two stages, discovery and adjudicative, is crossed." *Shane Grp.*, 825 F.3d at 305; *see Rudd Equip.*, 834 F.3d at 593 (explaining the "stark difference" between secrecy at the discovery stage and "the sealing of the court's docket and filings," and that at the latter stage, "when the parties place material in the court record, … very different considerations apply" (citations omitted)). The right of access "does not depend on … judicial reliance on the documents." *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 172 (4th Cir. 2024); *see Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016) ("The fact

that a suit is ultimately settled without a judgment on the merits does not impair the 'judicial record' status of pleadings.").

Although CoreCivic asserts that "the public's interest in access is weak" if the court has not relied on a document, CoreCivic Br. 22, this Court has explained that the public is also interested in "the conduct giving rise to the case" and "the litigation's result." *Shane Grp.*, 825 F.3d at 305. And in "assess[ing] for itself the merits of judicial decisions," *id.*, the public has an interest in both the information that the court relied upon for its decision and the information in the record that the court did not find persuasive. *See League of Women Voters of U.S. v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020) (in concluding that the right of public access applied to information from a deposition, stating that "[w]ithout access to the sealed materials, it is impossible to know which parts of those materials persuaded the [district] court and which failed to do so (and why)" (quoting *MetLife*, 865 F.3d at 668)).[2]

---

[2] CoreCivic attempts to distinguish *MetLife* on the basis that the case concerned an administrative record, rather than one compiled "through an adversarial process." CoreCivic Br. 27. The origin of the filings in the court record, however, is a distinction without a difference with respect to the public right of access.

Although CoreCivic cites *In re Perrigo Co.*, 128 F.3d 430 (6th Cir. 1997), that case concerned neither a sealing order nor a record filed on the docket. Rather, there, the Court held that a report implicating attorney-client privilege could be produced to the plaintiffs and submitted to the district court for *in camera* review "without making it public property." *Id.* at 441. CoreCivic cites dicta stating that a report could be disclosed to the public at a later stage, and that the district court should conduct a hearing to determine whether to order public disclosure "[i]f and when the district court intends to rely on the Report in making a decision in this case." *Id.* at 440. In context, however, that statement means that if the report enters the court record, the strong presumption in favor of openness might be overcome, notwithstanding that the report was subject to the attorney-client privilege.

In any event, the district court indicated that it *did* find the complete transcripts relevant, stating that "[t]he filing of complete transcripts is … frequently helpful to the court." Mem. & Order, RE 515, Page ID #27402; *see id.* (discussing the court's "interest in encouraging

parties to file … full transcripts").[3] And just as the court relies on the full transcripts to provide it with context for the evidence cited by the parties, the parties and the public likewise rely on the full transcripts to provide that context.

## III. The district court erred in denying the motion to unseal the complete transcripts filed on the court docket.

### A. CoreCivic bears a heavy burden to justify the sealing of the transcripts.

As the party seeking sealing, CoreCivic bears "a heavy" burden to justify sealing. *Shane Grp.*, 825 F.3d at 305. In addition, this Court has explained that the "public interest in the litigation's subject matter" or the fact that a case is a class action, "where by definition some members of the public are also parties to the case," demands applying "the standards for denying public access to the record … with particular strictness." *Id.* (internal marks omitted).

CoreCivic agrees that the public has a strong interest in the subject matter of this underlying class action lawsuit. CoreCivic Br. 27. Thus, as

---

[3] CoreCivic's repeated assertion that the district court found that the sealed transcripts were not "actually relevant," CoreCivic Br. 15, 24, 28, is inaccurate. Rather, the passage that CoreCivic quotes reflects the district court's recitation of *CoreCivic's* position—not any finding by the court. *See* Mem. & Order, RE 515, Page ID #27402.

the Banner explained and the district court found, CoreCivic bears a heavy burden to overcome the strong presumption of openness here. *See* Banner Br. 15–16; *see also* Order, RE 494, Page ID #26212.

**B. No compelling interest overcomes the strong presumption in favor of openness here.**

This Court has recognized three discrete categories of information where there is a compelling reason sufficiently weighty to overcome the strong presumption in favor of public access: "trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault)." *Shane Grp.*, 825 F.3d at 308 (citation omitted).

In denying unsealing of the full transcripts, the district court invoked the court's "interest in encouraging parties to file supplemental full transcripts" in addition to excerpts of transcripts. Mem. & Order, RE 515, Page ID #27402. CoreCivic does not argue that this interest justifies sealing. Instead, it contends that sealing was proper because the information in the transcripts reveals trade secrets or is covered by a statutory confidentiality provision. Neither argument succeeds.

### 1. CoreCivic's assertion of trade secrets fails.

CoreCivic asserts that the information in the hundreds of pages of two dozen deposition transcripts filed on the docket "qualifies as trade secrets." CoreCivic Br. 29. This assertion is not supported by the record.

Notably, this appeal is the first time that CoreCivic has made that assertion; neither its opposition to the Banner's motion to unseal, nor the years-old motions to seal cited by CoreCivic, claimed that the transcripts contain trade secrets. In opposing the Banner's motion, CoreCivic asserted that the information contained a "significant amount of [Bureau of Prisons (BOP)] and CoreCivic confidential information." CoreCivic Opp., RE 513, Page ID #26383. Further, in moving to seal a subset of the transcripts approximately three years ago, CoreCivic stated that the deposition transcripts contained, among other things, a deponent's "home address and his personal telephone number," "direct quotations" of a report that is now publicly available,[4] and "[t]he Company's policies and procedures for conducting internal audits." CoreCivic Mot. to Continue Sealing, RE 413, Page ID #23493–94. It additionally asserted, in a

---

[4] *See* Banner Mem., RE 504, Page ID #26261 (noting that "[t]he BOP's July 27, 2012, After-Action Report" is publicly available online).

14

different motion to seal filed over three years ago, that for six deposition transcripts, the information "would hurt the Company's competitive standing in the industry." CoreCivic Mot., RE 288, Page ID #9548.

To start, phone numbers, home addresses, and information quoting a publicly available BOP report are plainly not trade secrets.

In addition, CoreCivic's assertion that the sealed transcripts contain "a significant amount of BOP and CoreCivic confidential information," CoreCivic Opp., RE 513, Page ID #26383, does not demonstrate the existence of trade secrets. *See Magnesium Mach., LLC v. Terves, LLC*, 2021 WL 5772533, at *4 (6th Cir. Dec. 6, 2021) (stating that "confidentiality alone does not a trade secret make"). And the generalized assertion of confidentiality is inadequate to justify sealing, as the Banner has explained, *see* Banner Br. 17–18, because it "offers only platitudes," and is not a sufficient reason to seal court records. *Shane Grp.*, 825 F.3d at 308; *see Lipman v. Budish*, 974 F.3d 726, 753 (6th Cir. 2020) (stating that an assertion of confidentiality "conflat[es] the standards for protective orders ... and orders to seal filings, which implicate the right of the public to access court records"); *Shane Grp.*, 825

15

F.3d at 307. Moreover, the fact that BOP does not assert confidentiality or oppose the unsealing of these records undercuts CoreCivic's assertion.

CoreCivic's position that the sealed information, if disclosed, "qualifies as trade secrets" because it "might harm CoreCivic's competitive standing," CoreCivic Br. 29 (brackets omitted), fails on multiple grounds. To begin with, the assertions of competitive harm that CoreCivic cites relate to only six unique deposition transcripts.[5]

In addition, as this Court has explained, the "concern about 'competitively-sensitive financial and negotiating information' … is inadequate" to justify sealing. *Shane Grp.*, 825 F.3d at 307. In *Shane Group*, the Court held that hospital and commercial insurers' "financial and negotiating information" about an insurance company's outdated reimbursement practices was not a "legitimate trade secret." *Id.* at 308. Here, the information that CoreCivic seeks to protect concerns events that are approximately a decade old and involves BOP contracts that

---

[5] *See* CoreCivic Mot., RE 288, Page ID #9547–48 (requesting sealing for six deposition transcripts attached at RE 267); CoreCivic Mot. to Continue Sealing, RE 413, Page ID #23494 (requesting sealing for a deposition transcript that was already sealed at RE 267-4).

CoreCivic no longer operates. The nature of the information belies the assertion of trade secrets.

Contrary to CoreCivic's suggestion, *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), did *not* hold that information resulting in competitive harm justified the denial of public access. Rather, in the passage that CoreCivic cites, the Court listed examples where state courts had denied public access based on harm to "a litigant's competitive standing." *Id.* at 598. The Court, however, did not adopt that reason and made clear that it was not setting forth a standard for the right of access. *See id.* at 599.[6]

*United States v. Howley*, 707 F.3d 575 (6th Cir. 2013), likewise does not support the notion that the sealed information comprises trade secrets. CoreCivic quotes from *Howley* the statutory definition of "trade secrets" in the Defend Trade Secrets Act, 18 U.S.C. § 1839. Whether or not that definition applies to this context, "[n]ot all business knowledge

---

[6] Moreover, neither the Michigan nor the New Jersey case cited in *Nixon* addressed the sealing of records filed in court. *See Schmedding v. May*, 85 Mich. 1, 4 (1891) (denying a writ for disclosure under Act 205 of the Public Acts of 1889 for records and papers that were not in "proceedings … in open court"); *Flexmir, Inc. v. Herman*, 40 A.2d 799, 799 (N.J. Ch. 1945) (injunction against using "secret processes").

is a trade secret" under 18 U.S.C. § 1839. *Howley*, 707 F.3d at 579. And the factual record here does not demonstrate that the statutory definition is met in any event. *Cf. James B. Oswald Co. v. Neate*, 98 F.4th 666, 675 (6th Cir. 2024) (stating that "cases have treated whether something is a 'trade secret' …as [a] factual question[]").

As a fallback, CoreCivic asserts that "[e]ven if the information does not comprise trade secrets, it is 'comparable to a trade secret.'" CoreCivic Br. 30 (citing *Shane Grp.*, 825 F.3d at 308). But *Shane Group* does not hold that information "comparable" to a trade secret justifies sealing. Rather, there the Court concluded that the information at issue was *not* entitled to sealing. Moreover, here, nothing in the public excerpts of the transcripts suggests that the sealed testimony contains information "comparable" to trade secrets.

### 2. CoreCivic's assertion that the sealed information is "source selection information" fails.

**a.** CoreCivic also contends that sealing the transcripts is justified because they contain "source selection information" within the meaning of the Federal Acquisition Regulation, 48 C.F.R. § 3.104-4(a). For this contention, CoreCivic cites assertions that it and BOP made approximately three years ago in their motions to seal. But neither

CoreCivic nor BOP raised the argument in opposing the Banner's motion to unseal the deposition transcripts. *See* CoreCivic Opp., RE 513, Page ID #26377, 26381–83; BOP Mem., RE 512, Page ID #26350–58; *see also* CoreCivic Opp., RE 513, Page ID #26382 ("reincorporat[ing] the arguments set forth in ECF No[.] 492," which also did not request sealing the two dozen transcripts on the basis that they contained source selection information).[7] The argument was therefore forfeited. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).

In addition, BOP did not assert in its prior motion to seal from three years ago, as CoreCivic suggests, that the two dozen transcripts sealed here contain source selection information. Rather, BOP identified a handful of pages in four deposition transcripts (Douglas M. Martz, D. Scott Dodrill, Harley G. Lappin, and Donna Mellendick) that it stated revealed source selection information. *See* BOP Mem., RE 410, Page ID #23468–71. Then, in response to the Banner's motion, although BOP opposed unsealing 35 specific records that it identified as containing

---

[7] *See also Thomas M. Cooley L. Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 710 (6th Cir. 2006) (stating that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" (citation omitted)).

source selection information, it did not include *any* sealed deposition transcript on that list. *See* BOP Mem., RE 512, Page ID #26350–53. And it further stated that it did "not oppose unsealing of any docket entries except for certain documents that contain source selection information" and repeated its list of 35 records. *Id.* at Page ID #26357–58.

CoreCivic's assertion that the Banner "does not challenge" that "source selection information" justifies sealing, CoreCivic Br. 28, misses the point. The district court did not justify sealing the deposition transcripts on the basis that they contained source selection information. Because the Banner appealed the sealing of only the deposition transcripts filed on the docket, it had no reason to address in its opening brief the court's ruling that *other* records, not at issue in this appeal, should remain sealed because they contain source selection information.

**b.** CoreCivic's belated assertion that the transcripts are properly sealed because the information is "source selection information," 48 C.F.R. § 3.104-4(a), is wrong in any event. Section 3.104-4(a) provides: "Except as specifically provided for in this subsection, no person or other entity may disclose contractor bid or proposal information or source selection information to any person other than a person authorized … to

20

receive such information." The regulation implements the Procurement Integrity Act, 41 U.S.C. § 2102, which provides that "[e]xcept as provided by law," certain persons "shall not knowingly disclose contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates." *Id.* § 2102(a)(1).

> "Source selection information" is defined as:
>
> any of the following information that is prepared for use by an agency for the purpose of evaluating a bid or proposal to enter into an agency procurement contract, if that information has not been previously made available to the public or disclosed publicly: (1) Bid prices submitted in response to an agency invitation for bids, or lists of those bid prices before bid opening. (2) Proposed costs or prices submitted in response to an agency solicitation, or lists of those proposed costs or prices. (3) Source selection plans. (4) Technical evaluation plans. (5) Technical evaluations of proposals. (6) Cost or price evaluations of proposals. (7) Competitive range determinations that identify proposals that have a reasonable chance of being selected for award of a contract. (8) Rankings of bids, proposals, or competitors. (9) Reports and evaluations of source selection panels, boards, or advisory councils. (10) Other information marked as "Source Selection Information—See FAR 2.101 and 3.104" based on a case-by-case determination by the head of the agency or the contracting officer, that its disclosure would jeopardize the integrity or successful completion of the Federal agency procurement to which the information relates.

48 C.F.R. § 2.101; *see also* 41 U.S.C. § 2101(7) (similar).

First, CoreCivic has not identified which of the above ten categories it asserts as its basis for claiming that there is "source selection information" in the transcripts (and the BOP and district court did not either). CoreCivic's say-so is not enough to bring the sealed information within the scope of the provision. *See Am. Small Bus. League v. Dep't of Def.*, 372 F. Supp. 3d 1018, 1025 (N.D. Cal. 2019) (in ordering disclosure under the Freedom of Information Act, stating that "the government has not sufficiently shown that the redacted information constitutes 'source selection information' with the [Procurement Integrity Act's] definition").

Second, the restriction on disclosure in section 3.104-4(a) does not impose a blanket restriction on the disclosure of source selection information. Indeed, it does not apply to information pertaining to contracts that have already been awarded and have since been terminated. *See* 41 U.S.C. § 2102(a)(1) (prohibiting disclosure only "before the award of a Federal agency procurement contract to which the information relates"); *see also* 48 C.F.R. § 3.104-4(f)(3) (contemplating

22

disclosure of "information after award of a contract or cancellation of a procurement" that does not "pertain[] to another procurement").[8]

Here, CoreCivic has not shown that the sealed information is within the scope of the disclosure restriction in section 3.104-4(a). For example, CoreCivic does not dispute that CoreCivic "no longer operate[s] any prison contracts for the BOP." Banner Br. 19 (quoting CoreCivic's 2023 SEC annual report). And CoreCivic does not point to anything in the record showing a future procurement contract (or even a reasonably foreseeable one) between BOP and CoreCivic to which the information in the sealed transcripts would pertain.

Finally, CoreCivic's invocation of BOP's purported privacy interests does not support denying public access. Indeed, BOP has disclaimed any

---

[8] *See also* 48 C.F.R. § 3.104-4(e)(2) (disclosure restrictions do not apply to information "relating to a Federal agency procurement after it has been canceled by the Federal agency, before contract award, unless the Federal agency plans to resume the procurement"); *id.* § 15.506(e) (contemplating disclosure of information after contract award under the Freedom of Information Act); *id.* § 3.104-4(e)(1) (disclosure restrictions do not "prohibit … [a] contractor from disclosing its own bid or proposal information or the recipient from receiving that information"); *see, e.g.*, *Citizens for Resp. & Ethics in Wash. v. U.S. Gen. Servs. Admin.*, 358 F. Supp. 3d 50, 56 n.2 (D.D.C. 2019) (stating that appraisal and bid information was outside the scope of the regulation's disclosure restriction).

interest in these records. *See* BOP Mem., RE 512, Page ID #26350–52, 26357–58 (stating that it "does not oppose the unsealing of any docket entries" other than the ones identified in its memorandum). In addition, CoreCivic suggests, *see* CoreCivic Br. 29, that BOP is an "innocent third part[y]," *Shane Grp.*, 825 F.3d at 308 (citation omitted), with a "justifiable expectation of privacy," *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 477 (6th Cir. 1983). But BOP is not a private third party like the hospitals or insurers in *Shane Group* or the individual borrowers in *Knoxville News-Sentinel*, because BOP is a public agency subject to disclosure requirements under the Freedom of Information Act. Moreover, CoreCivic's description of some of the sealed information— pricing tools, budgeting methodology, and staffing policies and financial incentives—shows that the information is not BOP's information but rather CoreCivic's. BOP has no reasonable expectation of privacy with respect to CoreCivic's information, especially where CoreCivic is permitted to disclose it. *See* 48 C.F.R. § 3.104-4(e)(1) (stating that section 3.104-4 does not "restrict or prohibit … [a] contractor from disclosing its own bid or proposal information").

### C.    The district court's sealing order was not narrowly tailored.

Where a compelling reason overcomes the strong presumption of public access, "the seal itself must be narrowly tailored to serve that reason." *Shane Grp.*, 825 F.3d at 305. The party seeking sealing thus must "demonstrate—on a document-by-document, line-by-line basis— that specific information in the court record meets the demanding requirements for a seal." *Id.* at 308; *see id.* at 305–06 ("The proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'").

The narrow tailoring of a seal is required. *See id.* at 305 (using the word "must"). It is not required only "where practicable" or excused where "not warranted under the 'circumstances of th[e] particular case.'" CoreCivic Br. 30. Rather, the strong presumption in favor of public access demands it. *See Shane Grp.*, 825 F.3d at 307 (concluding that the district court abused its discretion in "seal[ing] off broad swaths of the court record").

Here, CoreCivic does not dispute that the seal was not narrowly tailored. In opposing the Banner's motion to unseal, CoreCivic provided no document-by-document or line-by-line explanation for why the specific

information in each of the transcripts required sealing, and the court gave none in sealing the records. The transcripts were filed entirely under seal, and the only information that CoreCivic later publicly filed (in response to the Banner's motion) was excerpted testimony that "any party or the district court had cited." CoreCivic Br. 14. For example, for two transcripts, hundreds of pages are entirely sealed and only four pages publicly disclosed. *See* Transcript Excerpts, RE 513-8, Page ID #27283–85; *id.*, Page ID #27341–43. And CoreCivic's descriptions of the sealed information show that only some parts of the complete transcripts would reveal the information that CoreCivic asserts is confidential. *See, e.g.*, CoreCivic Mot., RE 288, Page ID #9548–50 & n.2 (identifying specific lines in the transcripts as "[e]xamples of confidential information," but nonetheless seeking the sealing of the complete transcripts).

## D. The Court should reverse and order unsealing of the transcripts.

Courts of appeals have reversed district court sealing orders and remanded with instructions to unseal information that was improperly sealed. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 275 (4th Cir. 2014); *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 694 (5th Cir. 2010); *United States v. Ladd*, 218 F.3d 701, 706 (7th Cir. 2000);

*see also Meyer Goldberg*, 823 F.2d at 164 (reversing order sealing information and remanding for further proceedings).

CoreCivic asserts that the proper remedy here is vacatur, not reversal, so that on remand, it may have another chance to demonstrate that sealing was justified. Where this Court, however, has remanded for further findings justifying the seal, it was because the district court had failed to set forth any findings or conclusions explaining "why the interests in favor of closure were compelling, or why those interests outweighed the public interest in access to court records." *Shane Grp.*, 825 F.3d at 307; *see In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 939–40; *Meyer Goldberg,* 823 F.2d at 164; *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1176. By contrast, here, the district court did make those findings and conclusions, *see* Mem. & Order, RE 515, Page ID #27402, but the reasons given do not justify sealing under this Court's precedents. Moreover, it was CoreCivic's burden to articulate a compelling interest outweighing the strong presumption in favor of openness. It failed to do so.

In these circumstances, CoreCivic should not be given yet another bite at the apple. The Court should reverse and remand with instructions to unseal the records at issue.

## CONCLUSION

This Court should reverse the district court's decision and remand with instructions to unseal the deposition transcripts filed on the docket.

Respectfully submitted,

/s/ *Wendy Liu*

| | |
|---|---|
| Daniel A. Horwitz | Wendy Liu |
| Melissa K. Dix | Adina H. Rosenbaum |
| Lindsay Smith | Public Citizen Litigation Group |
| Horwitz Law, PLLC | 1600 20th Street NW |
| 4016 Westlawn Dr. | Washington, DC 20009 |
| Nashville, TN 37209 | (202) 588-1000 |
| (615) 739-2888 | |

*Counsel for Intervenor-Appellant*

December 27, 2024

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). As calculated by my word processing software (Microsoft Word for Office 365), the brief contains 5,644 words, not counting the parts of the brief excluded by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1). The brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief is composed in a 14-point proportional typeface, Century Schoolbook.

/s/ *Wendy Liu*
Wendy Liu

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Wendy Liu*
Wendy Liu